STATE OF MAINE                                      *      SUPERIOR COURT
OXFORD, SS.                                                 CIVIL ACTION

                                                           CONSOLIDATED
                                                           DOCKET NOS.  RE-10-22
                                                                              RE-18-09
                                                                              RE-10-07
                                                           *RWC-OXF - 7/21/2011*

TOWN OF NORWAY,
         Plaintiff

         v.                              RE-10-07

BiTiM ENTERPRISES, INC.,
         Defendant

    _____                                    DECISION AND JUDGMENT

BiTiM ENTERPRISES, INC.,
         Plaintiff

         v.                              RE-10-09
                                         RE-10-22

TOWN OF NORWAY,
         Defendant


         These consolidated cases were heard on July 14 and 15, 2011. BiTiM Enterprises,

Inc., whose principal is Barry Mazzaglia, was represented by Durward W. Parkinson,

Esq. The Town of Norway was represented by James E. Belleau, Esq., and Norman J.

Rattey, Esq. The Town Manager, David Holt, was present with counsel throughout the

trial as well.

         At issue is the value of property, which was owned by BiTiM, located at 396-418

Main Street in Norway. The property is commonly known as the Norway Opera

House, and is considered to be a major landmark with historical significance.

         Pursuant to 30-A M.R.S.A. § 5204, the Town has taken title to the property by

eminent domain. The date of the taking was December 8, 2009. There is no dispute that

the taking was for a legitimate purpose and complied with all applicable law. The only

FEB-04-1996 08:38

issue before the court is the value of the property as of December 8, 2009. BiTiM's position is that the value of the property was $328,000. The Town offered $185,000 at the time of the taking.

The brick building on the property has three levels, with retail space on the first floor, and the second and third levels being the former opera house and balcony with a lot of open space. The cellar is for storage. The property was purchased by BiTiM in 2003 for $225,000.

The property is quite old, and in September of 2007, part of the roof collapsed and a rupture of the sprinkler system occurred, causing the sprinkler system to flood the building. The retail tenants, who had been operating on the first floor, were forced to vacate the premises. The building was in a very unstable condition and has been without tenants since that time. Steps were taken by BiTiM in 2007 and 2008 to shore up the building.

In September of 2009, the Superior Court, at the request of the Town, issued a permanent injunctive order regarding the building,[1] against BiTiM.[2]

In the September Order, the court found the structure to be unstable, with one or more walls and the roof at risk of collapsing and ordered BiTiM to take steps to shore up and stabilize the property. The court order prohibited occupation of the property without the issuance of an occupancy permit by the Town or without a report issued by the professional engineer licensed in the State of Maine, certifying the property to be safe and stable.

---

[1] In June of 2009, a temporary order was issued by the court.

[2] BiTiM Enterprises is a New Hampshire corporation and at the time was not represented by an attorney. As a result, it was not allowed to present evidence to dispute the evidence of instability presented by the Town.

Prior to the September 2009 hearing leading to the injunctive order issued by the Superior Court, BiTiM, through its principal owner, Barry Mazzaglia, had done a substantial amount of work to stabilize the building. Despite that work, the court found the building to be unstable and dangerous, and the evidence presented at this trial is consistent with the findings made by the court in September of 2009.

The parties presented substantial evidence on the condition of the building since 2007 and up to 2011, and on what had been done and what was needed to be done to stabilize the structure.[3]

BiTiM presented evidence as to the work Barry Mazzaglia did to stabilize the building after the partial roof collapse, and the damage done by the sprinkler system. BiTiM also presented testimony of an engineer and a contractor as to the condition of the building, what had to be done, and what the cost would be to get the building ready for occupancy. BiTiM's evidence was that, in 2009, the cost of stabilizing the building and making it ready for occupancy was approximately $22,000.

BiTiM presented the testimony of a professional engineer, Jason Potter, who outlined in a two-page letter what, in his opinion, would be required to make the Opera House structurally sound as of the summer of 2009. His report recommends more columns at the outside wall, and reducing the then current twenty-foot span between the columns to add support, and to install a new column or columns from the second floor to the footing (basement) level. He also recommended tying the rear wall to the several floors to stabilize the rear wall. The report did not assess what, if anything, should be done with the trusses, many of which had become compromised.

---

[3] The court took a view of the property in January 2011.

3

BiTiM also presented the testimony of Douglas Bell, a contractor, who reviewed Potter's report and recommendations, and indicated that the cost of implementing the work recommended by Potter would be $21,750, or rounded off to $22,000.

It is this estimate on which the appraiser, Rogers, relied in his income approach appraisal of the building to be $328,000. The court finds the $22,000 estimate to stabilize the building and make it ready for occupancy, to be very inadequate. The cost proved to be substantially higher.

BiTiM also presented the testimony of J. Chet Rogers, a commercial real estate appraiser, who appraised the value of the building as of December 8, 2009, the date of the taking of the building. Rogers used the income method of appraisal and appraised the building at $328,000. Crucial to Rogers use of the income approach in his appraisal of the building was on the cost of the work that was needed to rehabilitate the building to make it rentable and bring it to a condition so that a certificate of occupancy could be issued. He used a cost estimate of approximately $22,000. He admitted that if the cost to rehabilitate the building was substantially more than $22,000, and certainly if it was in excess of $100,000, than his opinion of the value based on the income approach could not be relied on.

After the work performed by BiTiM in 2008 to stabilize the Opera House, the Town hired an engineering firm, Resurgence, to address the stabilization of the building. Alfred H. Hudson III, of Resurgence, concluded that the building was not stable, and that it needed substantial additional shoring work to stabilize it, work, that should be designed by an engineer familiar with the stabilization of such buildings, and undertaken by a contractor experienced with such work.

Resurgence is an experienced engineering firm, and Hodson is a very experienced engineer with extensive experience in assessing, repairing, and

4

rehabilitating older buildings. The Town hired Resurgence to design what needed to be done to the Opera House, and to prepare an invitation to bid to do the work to stabilize the building.

The bid to do the stabilization work was won by Chabot's Construction, and a contract was signed in November of 2010 for Chabot to do extensive rehabilitation and stabilization work on the property. Chabot's Construction has extensive experience in rehabilitation and repair of substantial buildings, including the libraries of Lewiston and Auburn, and several textile buildings in Lewiston.

That work was performed by Chabot's Construction in late 2010, and was done satisfactorily. The work done was extensive and the cost of the work exceeded $233,000. Thirteen of the building's seventeen tresses were compromised. The rear wall was ten percent out of plumb. Substantial brick work had to be done. The contract was performed in a reasonable and workmanlike manner, and was necessary to stabilize the Opera House. The court finds the testimony of Hodson, the engineer, and Chabot, the contractor, to be credible, and that the amount of $233,000 paid to Chabot to be reasonable and necessary to properly stabilize the building.

Moreover, the work designed by Resurgence and performed by Chabot was not to get the building in a condition ready for occupancy, but rather was to stabilize the building to make it safe and secure, and to eliminate the danger of collapse. After the work performed by Chabot, the building was not, and still is not, a building that is a functioning commercial enterprise ready for paying tenants. Substantially more work would be needed to make the building a permanently stable and functioning, income producing, retail structure.

As set out above, the $328,000 appraisal offered by BiTiM's appraiser was conditional on the cost of readying the building for occupancy was in the vicinity of $22,000.

BiTiM's appraiser, Rogers, admitted that his appraisal could not be relied on if the cost to rehabilitate and make the structure ready for paying tenants substantially exceeded $22,000. The court finds that the actual amount that was necessary and would still be necessary to ready the building for occupancy is so much in excess of $22,000, that the court has to conclude that the Rogers appraisal of $328,000 cannot be relied on and is substantially higher than the actual value of the building on December 8, 2009.

The Town's appraiser, Patricia Amidon, estimated the value of the building to be $185,000. She is a very capable and experienced real estate appraiser. She used the comparable sales method of appraisal. The court finds her appraiser methodology to be appropriate, and her testimony to be credible. Her opinion that the value of the building in December of 2009 was $185,000 is reasonable. The court finds that the value of the building on December 8, 2009, was no higher than $185.000, which was the amount offered by the Town to BiTiM, and which BiTiM is to be paid for the Town's taking of the Norway Opera House.

The entry is:

Judgment for the BiTiM Enterprises, Inc., in the amount of $185,000.

DATED: July 21, 2011

Robert W. Clifford
Active Retired Justice

6

BITIM ENTERPRISES, INC. - PLAINTIFF
P O BOX 1021
LONDONDERRY NH 03053
Attorney for: BITIM ENTERPRISES, INC.
DURWARD PARKINSON - RETAINED 03/02/2010
BERGEN & PARKINSON, LLC
62 PORTLAND RD, SUITE 25
KENNEBUNK ME 04043

vs
TOWN OF NORWAY - DEFENDANT

Attorney for: TOWN OF NORWAY
JAMES E BELLEAU - RETAINED 03/05/2010
SKELTON TAINTOR & ABBOTT
95 MAIN STREET
PO BOX 3200
AUBURN ME 04212-3200

Attorney for: TOWN OF NORWAY
NORMAN RATTEY - RETAINED 03/02/2010
SKELTON TAINTOR & ABBOTT
95 MAIN STREET
PO BOX 3200
AUBURN ME 04212-3200

SUPERIOR COURT
OXFORD, ss.
Docket No SOPSC-RE-2010-00022

DOCKET RECORD

Filing Document: COMPLAINT                    Minor Case Type: EMINENT DOMAIN
Filing Date: 03/02/2010

## Docket Events:

03/02/2010 FILING DOCUMENT - COMPLAINT FILED ON 03/02/2010

03/02/2010 Party(s): BITIM ENTERPRISES, INC.
           ATTORNEY - RETAINED ENTERED ON 03/02/2010
           Plaintiff's Attorney: DURWARD PARKINSON

03/02/2010 Party(s): TOWN OF NORWAY
           ATTORNEY - RETAINED ENTERED ON 03/02/2010
           Defendant's Attorney: NORMAN RATTEY

03/02/2010 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 03/02/2010

03/08/2010 Party(s): TOWN OF NORWAY
           RESPONSIVE PLEADING - ANSWER FILED ON 03/05/2010

03/08/2010 Party(s): TOWN OF NORWAY
           ATTORNEY - RETAINED ENTERED ON 03/05/2010
           Defendant's Attorney: JAMES E BELLEAU

03/09/2010 DISCOVERY FILING - DISCOVERY DEADLINE ENTERED ON 11/05/2010

           ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 03/05/2010
           ROBERT W CLIFFORD , ASSOCIATE JUSTICE